FRED STEGMANN et. al., Appellants, v. HENRY L. WEEKE, Commissioner of Weights and Measures of City of St. Louis.

(No. 21,151)

Division Two, July 5, 1919.

1. INJUNCTION: Dismissal Without Hearing. In an injunction, if the bill states a cause of action entitling plaintiff to a hearing on the merits and he does not in any way waive his right to have the case proceed in due course, it would seem, though it is not decided, that, under Sec. 2532, R. S. 1909, the court is not authorized to dismiss the bill without a hearing on the merits and without having passed upon the matter of issuing a temporary restraining order.

2. MEASUREMENTS: Unlawful Bushel: Prescribed By Ordinance. An ordinance which prescribes that a bushel box shall be 23¼ inches long, 9¾ inches deep and 11 inches wide calls for a box whose cubical content is 2493.5 inches, and is contrary to the statute (Sec. 11961, R. S. 1909) which says the content of a bushel shall be 2150.4 cubic inches, and attempts to make unlawful the use of a box of any other dimensions, even though it contained the exact statutory content.

3. MOOT CASE: Abatement: Costs. An appeal from a judgment dismissing plaintiffs' bill for an injunction at their cost will not abate unless thereby they are given a full measure of relief. Before a defendant may abate a case by complying with the demands of the petition, he must comply with all its demands, including the payment of costs.

4. ———: ———: Injunction: Threat to Continue Wrong. An injunction to restrain a city officer from destroying the market boxes of plaintiffs, who are farmers and gardeners, will not abate an ap-

peal on the ground that the objectionable sections of the ordinance under which defendant· had destroyed their boxes had been repealed after the case was submitted and others enacted in lieu thereof, if the defendant has threatened to destroy, without a hearing, all boxes he believes to be of different dimensions from those prescribed by the ordinance as amended. In view of such threat, the determination of the case does not turn upon a mere moot question.

5. **INJUNCTION: ·Clean Hands: Determined Without Hearing.** The trial court is not empowered to decide, without a hearing on the merits, upon a mere preliminary consideration of the question whether upon the face of the petition a temporary restraining order should be issued, that the plaintiffs have not come into court with clean hands.

6. ———: ———: **Limitations of Rule.** The rule that he who comes into equity must come with clean hands has its limitations. The particular iniquity which· prevents the pursuit of an equitable remedy must relate to the particular matter in hand, and must arise out of the transaction which is the subject of the suit. If the. plaintiffs, who by their petition ask that a city commissioner be restrained from destroying their market boxes, who has threatened to destroy them on the ground that they are not of the dimensions prescribed by ordinance, have used the boxes with the understanding that some persons would be deceived as to their contents, they come with unclean hands; but if the facts show that the boxes have long been in use, that the purchasers of their produce fully know their contents, and fail to show that some consumer or purchaser has been deceived, they do not come with unclean hands.

Appeal from St. Louis City Circuit Court.—*Hon. Wilson A. Taylor*, Judge.

REVERSED AND REMANDED.

*Edward W. Foristel, Taylor R. Young* and *T. T. Hinde*, for appellants.

(1) The first cause was not heard on its merits at a final hearing, hence, since the petition states a cause of action, the court should not have dismissed the suit at the preliminary hearing on the order to show cause why a temporary injunction should not issue. And even if the petition did not state a good cause of

action, appellants had a right to amend. Harrison v. Rush, 15 Mo. 175; State ex rel. v. Smith, 188 Mo. 179; (2) Sections 22 and 23, both original and amended, of the ordinance are unconstitutional, both under the Federal and State Constitutions, in that they impair appellants' right to contract and deprive them of their property without due process of law. Article 5 of Amendments to U. S. Constitution; Art. 2, sec. 10, U. S. Constitution; Art. 2, sec. 15, Missouri Constitution; Art. 2, sec. 30, Missouri Constitution; St. Louis v. Dreisoerner, 243 Mo. 224. (3) Original Section 23 of the ordinance is illegal under our statute providing that no city shall have the power to levy or collect a license or fee from any farmer or producer for the sale of produce raised by him, when sold from his wagon in a city. The annual inspection fee of ten cents per box is nothing more nor less than a tax, license or fee. Sec. 9516, R. S. 1909; St. Louis v. Meyer, 185 Mo. 583. (4) Original Section 22 of the ordinance violates our statute pertaining to weights and measures in at least two particulars: (a) It attempts to establish a standard bushel box with a capacity of 343.16 cubic inches in excess of the statutory standard; (b) it fixes absolute and arbitrary dimensions, thus limiting the shape, as well as the capacity, of the container. Sec. 11961, R. S. 1909; Sec. 11963, R. S. 1909.

*Charles H. Daues* and *H. A. Hamilton* for respondent.

(1) If an event occurs pending an appeal which renders a decision unnecessary, the appeal will be dismissed. Such condition may arise by the act of the appellee in relinquishing the right to do some act in respect to which the appeal was taken. That part of Ordinance No. 29795 against which complaint is made having been repealed, the matter presented in said cause is a moot question. (2) All substantial interest in the controversy having been extinguished, this court will not hear the appeal merely to determine the right to costs. Hicks v. St. Louis, 234 Mo. 647; Union El.

L. & P. Co. v. St. Louis, 253 Mo. 592; Howe v. Doyle, 187 Mich. 655; Russell v. Campbell, 112 N. C. 404; Mabry v. Kettering, 91 Ark. 81; Pinkerton v. Randolph, 200 Mass. 24; Moore v. Cooper Monument Co., 81 S. E. 170; Anderson v. Cloud County, 90 Kan. 15; Wingert v. First National Bank, 223 U. S. 670, 672; Lisman v. Knickerbocker Trust Co., 211 Fed. 413.

WHITE, C.—The plaintiffs are truck gardeners and farmers, and officers of a voluntary unincorporated association which consists of twenty-five hundred members. The defendant is Commissioner of Weights and Measures of the City of St. Louis. The plaintiffs filed their amended petition in the circuit court of St. Louis on April 24, 1918, in which they set out a certain ordinance of the City of St. Louis, No. 29795, enacted on the ninth day of August, 1917, which was alleged to be in violation of the State and Federal Constitutions and unreasonable and oppressive. Under this ordinance the defendant in his official capacity had destroyed, and threatened to continue destroying, certain boxes used by the plaintiffs and other members of the association. The petition asked for a temporary restraining order and, upon a final hearing, a permanent injunction to prevent said acts on the part of the defendant.

On the filing of said petition the court issued an order directing the defendant to show cause on a certain day why a temporary restraining order should not be issued. The defendant thereupon, on the day mentioned, filed his return to the order, in which he set out certain sections of the ordinance referred to, prescribing the dimensions of boxes which might be used in the marketing of produce, and alleged that the plaintiffs in marketing their produce used boxes of other and different dimensions, contrary to the ordinance, and for that reason he had seized a number of such boxes.

After hearing the evidence upon the petition and return, the court, instead of merely passing upon the matter of issuing a restraining order, *dismissed the bill at plaintiffs' costs.*

I. Appellants here complain that the court had no right in this mere preliminary hearing, in which the only matter to be determined by the court was whether a temporary restraining order should issue, to dismiss the bill; that the bill states a cause of action which entitled the plaintiff to a hearing on the merits, and even if it did not state a cause of action the plaintiff had a right to amend and have a trial in due course upon the merits of the case. Although the return of the defendant may be treated as an answer to the petition, it is not contended anywhere by the respondent that the taking of evidence was a trial of the case upon the merits or that the plaintiffs in any way waived their right to have the case proceed in due course. It looks as if Section 2532, Revised Statutes 1909, did not authorize this summary disposition, but the case may be disposed of without determining that question.

*Trial on Merits.*

II. The ordinance under which the defendant sought to justify his acts in destroying the plaintiffs' boxes, and which the plaintiffs claim is unconstitutional and unreasonable, consists of many sections. The pertinent ones set out in the petition and in the return, are sections 22 and 23. Section 22 provides that a standard bushel box shall be of the following dimensions, inside measurement: length, 23¼ inches; depth, 9¾ inches; width, 11 inches. Dimensions also are provided for half-bushel, quarter-bushel, eighth-bushel, sixteenth-bushel, and thirty-second-bushel boxes. The bushel box of the dimensions prescribed would contain 2493.56 cubic inches. The other boxes prescribing for fractional parts of a bushel correspond in capacity to the bushel box. Section 11961, Revised Statutes 1909, provides that the cubical contents of the half-bushel shall be 1075.2 cubic inches; double this would be 2150.4 cubic inches. This is approximately the same for the contents of the bushel, 2150.5 cubic inches, as provided by the Federal

*Unlawful Boxes.*

statute. The cubical contents of the bushel by the ordinance is therefore 343.06 inches in excess of the actual bushel provided by the State and Federal statutes.

The boxes used by the plaintiffs are spoken of in the evidence as "short bushel" boxes. The plaintiffs only claimed that they contained three-fourths of a bushel each, but by actual measurements the contents was seven-eighths of a bushel, and, when heaped up, a bushel. These were the boxes which the plaintiffs were using to dispose of their produce at the time they were seized and destroyed by the defendant. The appellants make a statement of the case which the respondent concedes to be correct, and the statement includes the written opinion of Judge Wilson A. Taylor who heard the case, which opinion sets out at length the facts as determined by him. According to the facts as found by Judge Taylor and as supported by the evidence in the record, the plaintiffs were farmers and truck gardeners. They sold their produce in the boxes mentioned to commission merchants only, who in turn sold it in the same boxes to retail men and hucksters, and such sales were never by the bushel, but always by the box. The commission man, the purchaser, knew exactly the contents of the box, as did also the hucksters who bought from the commission men.

The ordinance provides that it shall be unlawful for any person, firm or corporation to sell or offer for sale in the city of St. Louis any fruits or vegetables *in any box* or receptacle that is of a capacity different from that prescribed, providing a penalty for the violation of the ordinance. In other words, the ordinance provides an unlawful measurement for the selling of produce. If the appellants were using a box of any other contents than the one prescribed, even though it contain the exact statutory bushel, it would be as unlawful, according to the ordinance, as the boxes they actually used. It is the enforcement of this ordinance which the plaintiffs seek to enjoin.

Respondent, however, presents two reasons why .ie claims the judgment of the circuit court in dismissing the bill should be sustained here.

III. First, it is asserted, the question is now a moot question. It seems that after the case was submitted to the court in the manner mentioned the Board of Aldermen of the City of St. Louis repealed the objectionable sections of Ordinance 29795, and enacted others in lieu of them, so that there is no longer any possibility of an attempt to enforce them. So, it is argued, this court could not affect the condition of the parties by passing upon the question which is now merely academic.

Moot Question.

It is true, it has been determined by this court in several cases, when a defendant in any case voluntarily does the thing which the plaintiff seeks to have accomplished by an order of court, at any stage of the proceeding, whether it is done before or after the trial or before or after the appeal is granted, the suit may be abated. [Hicks v. City of St. Louis, 234 Mo. l. c. 653.] The repeal of an ordinance pending a prosecution under it, operates to relieve the defendant from further prosecution. [Electric Light & Power Co. v. St. Louis, 253 Mo. l. c. 603.] It is true in this case, the repeal of the ordinance at which the plaintiffs strike would disarm them, if that were all there is in the case. It is held, however, that before a defendant may abate a case by complying with the demands of the petition he must comply with *all such demands, including the payment of the cost.* [State ex rel. v. Philips, 97 Mo. l. c. 339-40.] This court there said in relation to that matter, l. c. 339: ''The plaintiff had the right to have the full measure of the relief he claimed, or else by a solemn adjudication of the court, to know the why and the wherefore of the refusal which denied him redress in full of his demands.'' Also, l. c. 340: ''Plaintiff was entitled to insist that the court should make such a thorough disposition of the whole cause as would protect him even against nominal damages or costs.''

In State ex inf. v. Standard Oil Co., 218 Mo. l. c. 390, it is held that before defendant may abate a suit in such case he must have paid all the costs. [See, also, Miller v. Assurance Co., 233 Mo. l. c. 98; in re Hutton's Estate, 92 Mo. App. l. c. 138.]

In this case the bill was dismissed at the plaintiff's costs. Not only that, but according to the statement which respondent admits is correct, the defendant intended to continue the destruction of plaintiff's boxes. If the court did not enjoin this proceeding he would continue to break up the boxes "until there is not another dinky box left in town." The threat could hardly be stronger. That is to say, the Commissioners of Weigths and Measures proposed, without a hearing, to punish all whom he believed to be violators of the ordinance as amended. So the repeal of the objectionable ordinance did not give the plaintiffs a full measure of relief, for the reason that the costs were assessed against them and for the reason that the destruction of their property was to be continued. Therefore, the determination of the case does not turn upon a mere moot question, but upon questions which the plaintiff has a right to have considered, though the result may have no effect except to determine upon whom the costs shall fall.

IV. The other point made by respondents is that the plaintiffs in this case did not come into court with clean hands. That was the theory as stated by Judge TAYLOR upon which he dismissed the bill. The fact that this question was decided without a hearing upon the merits of the case, but upon a mere preliminary consideration of the question, whether upon the face of the petition a temporary restraining order should be issued, is sufficient to stamp it as error. But inasmuch as the case is to be further considered by the circuit court it is well enough to touch upon that question.

The ancient maxim that he who comes into equity must come with clean hands has been applied to various

kinds of cases, but it has its limitations. The particular iniquity which prevents the pursuit of an equitable remedy on the part of a plaintiff must relate to the particular matter in hand, must arise out of the transaction which is the subject of the suit. [1 Pomeroy on Equity Jurisprudence, sec. 339; Williams v. Beatty, 139 Mo. App. l. c. 174; Hingston v. Montgomery, 121 Mo. App. l. c. 462; Chicago v. Union Stockyards Co., 164 Ill. 224.]

If the plaintiffs originally had constructed the boxes, had devised their contents, and had sold with the understanding that some purchaser would be deceived, there might be some reason for saying they did not come into equity with clean hands in seeking to prevent the destruction of the boxes. But it is shown that the commission men who purchased from the farmers bought by the box, knowing fully its contents, and never by the bushel; that the purchasers from the commission men, the retail dealers and the hucksters, bought in the same way. It is not shown that any consumer was deceived by these boxes. That is a matter upon which there is no allegation and no evidence. There is no evidence even that any consumer ever purchased any produce in those boxes. The finding of Judge Taylor is to the effect: "These same short bushels are handed on down to the retailer and *very likely* to the consumer."

It is not sufficient to show that there was a possibility of unfair dealing by some remote person in the chain of transactions, but it must be shown that the plaintiffs had reason to believe actual unfair dealings would be conducted.

These same boxes had been in use for twenty-five years; when heaped up they held a bushel, when level full they held seven-eighths of a bushel. The plaintiffs in the beginning probably in each case came into a business in which several thousand other farmers and truck gardeners were engaged, and found these boxes in universal use and no complaints made. They furnished their produce in the boxes and received empties to the same number in

return at the time of each sale. If the commission merchant didn't have the empties on hand for the exchange he would give an order on the box factory for the requisite number and the farmer immediately went there and got new boxes. It appears that most of these boxes were in fact purchased by the commission men. Neither on the face of the petition, nor on the evidence as produced at the preliminary, is there a showing that the plaintiffs came into court with unclean hands; that is a matter which should be determined upon the final hearing. If the plaintiffs knew or had reason to believe that the boxes passed on to the consumer and that the consumer was in fact deceived by them as to the contents, another question would be presented from that presented here, where no such facts are shown.

The conclusion is that the trial court was in error in dismissing the petition without a hearing, and no considerations have been presented to relieve from the consequences of that erroneous ruling.

The judgment is reversed and the cause remanded. *Railey, C.,* not sitting; *Mozley, C.,* concurs.

PER CURIAM:—The foregoing opinion by WHITE, C., is adopted as the opinion of the court. All of the judges concur.