**STATE ex rel. GENERAL DYNAMICS CORP., a Corp., Relator,**

v.

**The Honorable Drew W. LUTEN, Jr., Judge, Circuit Court, St. Louis County, Missouri, Respondent.**

No. 60100.

Supreme Court of Missouri, En Banc.

April 28, 1978.

Opinion Modified On Court's Own Motion.

Rehearing Denied June 15, 1978.

John C. Shepherd, St. Louis, for relator.

Veryl Riddle, St. Louis, for respondent.

RENDLEN, Judge.

This is prohibition. We are called upon to decide if respondent has improperly enjoined relator from prosecuting its pending action against McDonnell Douglas Corporation in the Superior Court of San Diego County, California, and if so, whether prohibition is the appropriate remedy.

General Dynamics Corporation's (General Dynamics) two count California suit, filed March 1, 1976, was amended March 23 to bring in four additional claims involving interpretation of and performance under the parties' August 7, 1968, contract. McDonnell Douglas Corporation (McDonnell Douglas) moved to stay that proceeding alleging as a bar, the presence of a "first filed" [1] Missouri suit with issues overlap-

ping those in the California case, particularly those raised by the March 23 amendment. The Superior Court of San Diego County, though apprised of McDonnell's "first" suit, denied the motion to stay, holding:

> "[t]he determinative factors guiding the Court are as follows: convenience of witnesses; location of documentation; interpretation of California law; unavailability of compulsory process in the State of Missouri; and the enforceability and conclusiveness of the Judgment."

Shunning appeal or other review of that ruling, McDonnell Douglas filed a motion, ancillary to its suit on the contract in St. Louis County, asking that court to *temporarily* restrain [2] General Dynamics from prosecuting the California action. In the proceedings that followed (faulted by relator as lacking due process), respondent *permanently* enjoined General Dynamics, who now seeks prohibition to prevent enforcement of that injunction.

Before examining the issues, it should be noted that nothing filed in this court demonstrates that testimony was presented in the May 21, 1976, hearing on General Dynamics' motion to stay and McDonnell Douglas' motion for temporary injunction. Though reference is made in the court's order, entered eventually on January 4, 1977, to "evidence" presented by the parties, no record of such "evidence" was preserved. Relator states categorically no testimony was given nor a court reporter present at the "so-called hearing." The

1. McDonnell Douglas had on the morning of March 1, 1976, a few hours prior to the filing of General Dynamics Corporation's California suit, filed its two count petition on the contract against General Dynamics in the Circuit Court of St. Louis County, Division No. 10, bearing Cause No. 378709.

2. McDonnell Douglas' motion, verified May 10, 1976 (the copy here bears no filing date), filed in connection with its original action is captioned "Motion by Plaintiff for *Temporary* Injunction," and contains the following statement: "Comes now plaintiff, McDonnell Douglas Corporation ("McDonnell") and respectfully moves that the Court *temporarily* enjoin defendant, General Dynamics Corporation ("Gen-

eral Dynamics") from proceeding with the action it filed in the Superior Court of the State of California for the County of San Diego subsequent to the commencement of this action until after this Court has ruled upon defendant's motion to dismiss or, in the alternative, to stay this action. . . . " (Emphasis ours.)

The prayer states: "WHEREFORE, McDonnell prays that the Court enter a *temporary* injunction ordering General Dynamics to proceed no further in the San Diego case until after General Dynamics' pending motion has been adjudicated by this Court and, if said motion is denied, to make said *temporary injunction permanent after further hearing.*" (Emphasis ours.)

court's minute entry of May 21, 1976, does not reflect the presentation of evidence and in respondent's affidavit made February 10, 1977, more than eight months later,[3] he states that at the May 21, 1976, hearing ". . . I heard *argument* from counsel for both McDonnell Douglas Corporation and General Dynamics Corporation . . ." (Emphasis ours.) No mention is made of evidence offered or received. Later in the affidavit, however, respondent added this conclusory statement: "[a]fter consideration of the motions, the *evidence*, the briefs and the arguments of counsel for both parties, on January 4, 1977, I denied General Dynamics Corporation's motion to dismiss or stay and entered the permanent injunction enjoining General Dynamics Corporation from prosecuting those issues it had added by amendment in the San Diego lawsuit." (Emphasis ours.) We are not told the nature of such "evidence" and because no record of that or the other proceedings have been filed here, the facts must be gleaned from the pleadings, numerous affidavits, written suggestions submitted in the various trial proceedings contained in a 135 page "Joint Appendix" filed by the parties. In addition, respondent has submitted supplemental and second supplemental appendices totaling 242 pages which contain additional memoranda, pleadings, interrogatories, notices and related materials.

The parties to the underlying contract of August 7, 1968, are Convair and Douglas, the California divisions of General Dynamics and McDonnell Douglas, respectively. By the contract's terms, Convair was to manufacture fuselages for DC–10 aircraft in San Diego to be shipped to Douglas' Long Beach plant for assembly in their finished aircraft. This contract was the fruit of extensive negotiations conducted in Long Beach by executives of Douglas and Convair, which climaxed with the execution of that agreement in California. Art. 24 thereof provides:

"This Agreement and purchase orders issued hereunder shall constitute the complete and exclusive statement of the entire agreement between the parties hereto. This Agreement and such purchase orders shall be construed and performance thereof shall be determined according to the laws of the State of California. . . ."

Among many substantial contract disputes that have arisen is one described as "the weight/price issue" relating to the industry-wide practice among aerospace companies of calculating the price of an airplane fuselage from an estimate of its weight. Quite early Convair and Douglas disagreed as to estimated weights to be used in those price calculations. In the summer and fall of 1975, the companies opened negotiations concerning the option price of future "ship sets" orders beyond the first three hundred to be furnished by Convair. The agreement is a long term requirements' contract with pricing provided for the first three hundred fuselage "ship sets" but with option pricing arrangements for subsequent "ship sets." By relator's briefs we are told that General Dynamics, in support of its motion to stay, detailed for respondent the many contacts of this litigation with California. For example, over four hundred file drawers of documents created by the negotiations and changes of the contract are in California, and fifty-five of the sixty witnesses potentially necessary to a proper resolution of this litigation reside there and are not subject to Missouri service of process. "[T]he DC–10 jetliner has been produced, assembled, and flight tested in California; the contract was negotiated, performed, executed, and amended in California; the outcome of this litigation directly affects thousands of California employees. . . ." In response, respondent's brief states that all major decisions concerning the DC–10 production and sales program have required the approval and continuous participation of McDonnell Douglas Corporate Offices in

---

3. Because of the unique manner in which those proceedings developed, respondent apparently deemed it necessary to make an affidavit ex curia relative to the alleged hearing in his court.

St. Louis.[4] The Chief Executive Officers of both companies reside and maintain their respective offices in St. Louis County.

In September of 1975, Sanford McDonnell, President and Chief Executive Officer of McDonnell Douglas and David Lewis, Chairman of the Board and Chief Executive Officer of General Dynamics, discussed possible resolution of the contract disputes. Sanford McDonnell, in an affidavit filed here in the parties' "Joint Appendix", complained that a number of items of correspondence from McDonnell Douglas to General Dynamics went unanswered during this period. These negotiations were largely unsuccessful and General Dynamics, faced with the possibility of its claim as to the weight/price issue being barred by limitations, prepared to file suit in San Diego. According to the Lewis affidavit of April 22, 1976 (also appearing in the parties' Joint Appendix), "it was necessary to file suit promptly."

### THE FEBRUARY 18, 1976, PHONE CONFERENCE

Before commencing the action, Lewis phoned McDonnell on February 18, 1976, and advised that his company was prepared to immediately file suit in California on the "Phase I Weight Issue." McDonnell "indicated surprise and a lack of knowledge of the issue" so Lewis reviewed the history of the matter, stating he was reluctant to file this suit and asked McDonnell "if he would consider sitting down and negotiating a settlement on a timely basis in a manner similar to the way we had settled the DC–10 contractual change matter in August of 1974." McDonnell stated he needed time to familiarize himself with the problem and inquired, "how much time General Dynamics Corporation could allow him before it required an answer" and asked that he be given "a few days time." Lewis explained he was to be out of the country during the week of February 23 and suggested March

1, 1976, for a further telephone conference on the subject. "This was agreed upon," but Lewis concludes:

"However, I very carefully conditioned my agreement for any delay upon Mr. McDonnell's personal assurance that McDonnell Douglas Corporation would not file action against General Dynamics Corporation on the Phase I Weight Claim because General Dynamics Corporation wanted to preserve its option to file suit on this issue in San Diego County."

Responding to the Lewis affidavit, McDonnell in his affidavit of April 15, 1976, admitted having received the February 18 call from Lewis, and gave this version of the conversation:

"Mr. Lewis stated that General Dynamics Corporation had prepared a lawsuit claiming that it was entitled to a $16,000,000 price increase on the 'weight' issue which they intended to file unless we settled that issue. I was disturbed that General Dynamics' only response to my letter was threatened litigation on a single issue and no response to my proposals for an overall settlement of our disputes. I asked Mr. Lewis if he wouldn't give me a little time to look into the matter since I was not familiar in detail with the 'weight' issue. He asked that I agree that McDonnell Douglas Corporation would not file suit first on the 'weight' issue. I agreed to this, and we agreed to talk further on March 1, 1976. . . . ."

From these statements we conclude that General Dynamics stood ready in February, 1976, to file suit in San Diego County, Superior Court, California, but in an effort to settle or amicably dispose of the weight/price issue, if not all others, its Chief Executive Officer advised McDonnell Douglas of the intention to proceed and readiness to file. If General Dynamics, instead of calling, had simply filed suit such

---

4. The foregoing statement from respondent's brief is difficult to reconcile with the affidavit of McDonnell Douglas' Chief Executive who . stated on March 1, 1976, he "was not familiar in detail with the 'weight' issue" and so advised General Dynamics that date.

action would have provided relator the "first filed" position McDonnell Douglas now claims for its Missouri action.

We are not persuaded by respondent's convoluted argument that only because of General Dynamics' "threatened litigation" did McDonnell Douglas agree to further conference on March 1, 1976, and that this somehow balances the equities. General Dynamics was free to have filed immediately without notification or discussion of its intentions and had it "sued first" and "talked later" its suit would have been "first in time." If McDonnell Douglas had refused to agree not to file on the "weight" issue or any other, General Dynamics could have proceeded forthwith and preempted the first position for its suit. From this a clear picture emerges of General Dynamics withholding filing suit pursuant to the parties' agreement of February 18, and this forebearance is critical to the issues here.

### THE MARCH 1, 1976, 8:30 A.M. PHONE CONFERENCE

On March 1, 1976, McDonnell phoned Lewis at about 8:30 a.m. and in his affidavit Lewis described that phone conference as follows:

"On 1 March 1976, Mr. McDonnell telephoned me at approximately 8:30 a.m. He stated that he had investigated the Phase I Weight matter extensively and had concluded that there was no merit to General Dynamics Corporation's position. He brought up the fact that there were now several additional issues of major significance between the two companies on the DC–10 program and suggested that he and I and one or two of our top people get together and see if we could not resolve all open issues, including the Phase I Weight Claim, without resorting to court action. He proposed a meeting in my office at 8:30 a.m. on 9 March 1976 and I agreed with this date provided that he again assured me that McDonnell Douglas Corporation would take no legal action against General Dynamics Corporation on the Phase I Weight issue. Mr. McDonnell again agreed to this condition."

In McDonnell's affidavit he discussed the March 1 call and gives this account of that phone conference.

"On March 1, 1976 I called Mr. Lewis in St. Louis and asked him if he would agree to enter into negotiations to settle all our disputes as part of a total package. I told Mr. Lewis I had looked into the 'weight' issue and I had concluded that General Dynamics' claim had little if any merit and, in fact, in my view General Dynamics owed McDonnell Douglas money on that issue. I told him, however, that I would be willing to negotiate on the 'weight' issue as part of negotiations on the overall contract dispute in an attempt to arrive at a total settlement package. Mr. Lewis refused to make a commitment to negotiate on an overall settlement basis. I then asked him if he would agree to binding arbitration of our disputes. He also refused to commit himself to arbitration. At the end of this conversation he again asked that I agree not to file on the 'weight' claim before General Dynamics Corporation, and I agreed."

It is significant that McDonnell did not deny the phone conference occurred at 8:30 a.m. and does not deny Lewis' statement as to McDonnell having proposed and Lewis having agreed to talk further on March 9. McDonnell further conceded in his affidavit that following this (8:30 a.m.) March 1 conversation with Lewis, the Executive Committee of McDonnell Douglas met, discussed and "voted unanimously to file a lawsuit asking for a declaratory judgment that the Contract is unenforceable. . . ."

### THE MARCH 1, 1976, 10:00 A.M. PHONE CONFERENCE

At approximately 10:00 a.m. on that day, McDonnell again phoned Lewis and (according to Lewis' affidavit) advised him that since their conversation earlier that morning, "[T]he Executive Committee of McDonnell Douglas Corporation had made the decision to file, and had filed, suit that morn-

ing. . . ." Lewis stated he was "shocked and indignant" and asked McDonnell "how this action could have been taken in view of his commitment given to me in the middle of February and again earlier that very morning that McDonnell Douglas Corporation would initiate no legal action against General Dynamics Corporation on the Weight issue." Lewis' account of these matters is not denied by McDonnell who simply ignores or fails to discuss (in his April 15 and May 12[5] affidavits) the 10:00 a. m. phone call to Lewis announcing that since the 8:30 a. m. phone conference, McDonnell Douglas had filed in St. Louis County. Thus, notwithstanding the February 18 and the 8:30 a. m., March 1 agreements which forestalled the immediate filing of General Dynamics' San Diego suit, McDonnell Douglas brought suit in St. Louis County Circuit Court and, after the fact, notified General Dynamics of its action. That afternoon General Dynamics understandably filed suit in the Superior Court of San Diego, California.

The McDonnell Douglas petition is in three counts: Count I asks the contract between the parties be declared "of no further force or effect."[6] Count II, on the other hand, seeks judgment declaring that only part of the contract "with regard to ship sets beyond set 300 is void and of no force or effect" and alternatively by Count III petitioner seeks a declaration of "proper method under the Contract for determining the price of ship sets 301–400."

The California suit filed on the afternoon of March 1, 1976, presents two claims (delineated Causes of Action) raising different aspects of the weight/price issue. In Cause of Action I plaintiff alleges defendant breached the August 7, 1968, contract "by refusing to perform its obligation thereunder in that, inter alia, it has refused and continues to refuse to negotiate in good faith an equitable adjustment in the ship set price which would give effect to the revised weights as provided in the Basic Agreement", and prays for damages in the amount of $16,200,000. Cause of Action II alleges a dispute has arisen as to the proper date for defining the revised weights and the correct method of computing the same and prays for a determination of the equitable adjustment in the ship set price necessary to give effect to said "revised weights," and that certain designated sections of the fuselage manufactured by plaintiff "should have been defined as of January 6, 1969" and that no portion of the weight estimates as of January 6, 1969 (specifically the tolerance allowance portion), should be omitted in computing the revised weights called for in the basic agreement between the parties.

On March 23, General Dynamics amended its suit, adding four new "Causes of Action" as follows: III seeks judgment declaring the contract valid and IV requests a declaration of General Dynamics' entitlement to the option price as computed by it under the contract. "Causes of Action" III and

---

5. On May 12, 1976, Sanford McDonnell made a "supplemental affidavit" in which he reasserted the McDonnell Douglas argument, appearing throughout respondent's brief, that McDonnell Douglas agreed "not to file suit first" only because of General Dynamics' threatened suit. In the affidavit he puts it this way: "On 18 February and 1 March 1976 I had the telephone conversations with David S. Lewis, Chairman, Chief Executive Officer, and President of General Dynamics Corporation, which are referred to in my previous affidavit before the Court. As I pointed out in that affidavit, I only agreed, as a result of a threat asserted by Mr. Lewis to file suit on the 'weight' dispute, not to file suit first on that single dispute." This again is the attenuated argument which ignores that General Dynamics was ready to file suit but withheld

on McDonnell Douglas' suggested agreement to bargain further.

6. The prayer of Count I requests that McDonnell Douglas be declared under no legal obligation to purchase future ship sets from General Dynamics, and that McDonnell Douglas "may purchase such ship sets from others or manufacture said ship sets itself without liability to General Dynamics." The prayer's second paragraph seeks an order that "General Dynamics is required to sell to McDonnell such additional ship sets as may be reasonably necessary to effect an orderly transition of manufacture from General Dynamics to McDonnell or another manufacturer" and finally for a determination as to the amount of payments if any which McDonnell should make to General Dynamics "upon termination of the contract".

IV involve generally the same issues raised in McDonnell Douglas' Missouri suit. In "Cause of Action" V, General Dynamics seeks "an equitable adjustment in price by virtue of McDonnell's unilateral stretch out of the delivery schedule" and by VI, a judicial determination of its right to payment of its cost increases resulting from structural alterations directed by McDonnell Douglas subsequent thereto. The latter two present additional issues which appear to be beyond the scope of McDonnell Douglas' Missouri action and accordingly a judgment there might not be dispositive of the issues in those "Causes of Action." We cannot be certain of this because of patent ambiguities in the pleadings and because we have not received the contract and related documents referenced therein.

 Turning now to the central issues, it is settled in Missouri that where two actions involving the same subject matter between the same parties are brought in courts of concurrent jurisdiction, the court in which service of process is first obtained acquires exclusive jurisdiction and may dispose of the entire controversy without interference from the other. *State ex rel. Kincannon v. Schoenlaub*, 521 S.W.2d 391 (Mo.banc 1975). In *State ex rel. Lamar v. Impey*, 365 Mo. 437, 283 S.W.2d 480, 482 (1955), it was stated this way, "The law is well settled that the jurisdiction of a court first invoked cannot be defeated by a subsequent proceeding in a court having concurrent jurisdiction of the person or subject matter." While this rule has certain exceptions, see *Nicholls v. Lowther*, 491 S.W.2d 3, 5 (Mo.App.1973), it is given broad application in cases filed in the courts of our state. Prohibition will lie to prevent interference in the proceedings of one court and the court in which the subsequent action is brought should sustain a plea in abatement. *Draper v. Louisville & N. R. Co.*, 348 Mo. 886, 156 S.W.2d 626 (1941). In *Draper, supra* at 627, the court went on to state:

" '[T]he general rule, that the pendency of a prior action, between the same parties, for the same cause of action, whether at law or in equity, may be pleaded in abatement of a subsequent action therefor . . ., applies only where two courts have concurrent jurisdiction of the same cause of action and where the prior action is pending in one of such courts, and the subsequent action in another; and therefore such a plea, ordinarily, *will not be sustained* where the prior action is pending in a *court of foreign or different jurisdiction*, or, as otherwise expressed, where the two actions are pending in courts of different sovereignties, such as in courts of different states . . . .' " (Emphasis ours.)

 While courts of one state have no authority to stay proceedings in the courts of another, a state court has power to control persons or things within its territorial limits and in an appropriate case may restrain a party from proceeding in another state, *Doerr v. Warner*, 247 Minn. 98, 76 N.W.2d 505, 513 (1956), but the court observed in *Carpenter, Baggott & Co. v. Hanes*, 162 N.C. 46, 77 S.E. 1101 (1913), ". . . the power should be exercised sparingly and only to suppress manifest injustice and oppression, and not from any arrogant sense of greater ability to do justice to either party or because of more favorable laws or of convenience of the parties." Put somewhat differently, the power of one State's court of equity to restrain persons within control of its process from the prosecution of suits in another State is clear, but on comity considerations, it should be employed with great caution. In *Bigelow v. Old Dominion Copper Mining & Smelting Company*, 74 N.J.Eq. 457, 71 A. 153 (1908), the court stated, "[T]here must be very special circumstances that will justify this court in restraining the prosecution of an equitable action already pending in a court of such ample jurisdiction. . . . A condition precedent to an application to this court for relief in all ordinary cases is the absence of a full, adequate and complete remedy elsewhere."

In the case at bar, there is no suggestion that the California court cannot do full justice in the premises, and considering questions of comity, factors favoring Cali-

fornia as the situs substantially preponderate against those in Missouri. As noted above, the headquarters and principal offices of McDonnell Douglas are officed in St. Louis County. Affidavits of company officers explain that perhaps twenty or more witnesses from Missouri and New York will probably testify and a large number of relevant corporate records and other evidence are located in Missouri. Against this are the numerous California witnesses (perhaps fifty or more); voluminous records are in California (estimated in relator's brief at more than four hundred file drawers of documents); most negotiations for and performance of the contract with some 1,500 changes occurred there; and California has been the place of the aircrafts' assembly. In addition, there is the provision of the contract that it "shall be construed and the performance thereof shall be determined according to the laws of the State of California." We also weigh the effect on these proceedings of the California court's ruling on McDonnell Douglas' motion to stay. In denying that motion (which appears justified from the record), the California court, as noted *supra*, detailed in its ruling the factors affecting the comity issue and McDonnell Douglas has not sought review of that decision by appeal or extraordinary legal remedy.

We now examine the injunction proceedings. McDonnell Douglas' motion "For Temporary Injunction" ancillary to its suit in St. Louis County, was apparently filed on or immediately after May 10, 1976. Its principal thrust is that McDonnell Douglas' first filed suit must be accorded preference and it is this claim of priority that McDonnell Douglas asserts as the equitable basis for injunctive relief. The contention cannot withstand close scrutiny. As previously noted, General Dynamics prepared and was

in the process of filing suit during February of 1976, but withheld so doing on the promise of McDonnell Douglas. From the affidavits and other records brought to this court, the conduct of McDonnell Douglas defeats its contention that the suit filed on the morning of March 1, 1976, should occupy a position of priority. General Dynamics' forebearance in reliance upon McDonnell Douglas' promises lead us to conclude that their suit in California filed on the afternoon of March 1, 1976, must be considered in equity as having been first filed. Apparently recognizing these equities and perhaps to avoid giving jural approval to McDonnell Douglas' sprint to the courthouse, the trial court enjoined General Dynamics *only* as to those issues "added by way of amendment on March 23, 1976," leaving it free to proceed on Causes of Action I and II. The trial court, however, erroneously determined that the March 23 amendments should be separated and enjoined General Dynamics from proceeding further on those issues, thereby effectively granting McDonnell Douglas' suit priority.[7] To follow that course would ignore several apparent equitable ingredients. General Dynamics was free at any time to file suit on the weight/price or any other issue stemming from the parties' contractual relationships. Having filed, it could freely amend and as provided by the California statute,[8] one such amendment is permitted as a matter "of course". The agreement for the "first-filing" carried with it the right to freely amend. While this does not mean McDonnell Douglas was not free to file its own suit, McDonnell Douglas may not be heard to say that General Dynamics' action will not be accorded a position of first in time or be limited as to amendments it might add. If General Dynamics were to be so limited, it would run afoul the Califor-

**7.** General Dynamics, to protect its time, filed notice of appeal in the Missouri Court of Appeals, St. Louis District, from the trial court's judgment. The pendency of that appeal does not affect the outcome of this original proceeding.

**8.** Section 472 of the California Code of Civil Procedure states: "Amendment *once of course*

. . . .. Any pleading may be amended once by the party of course, and without costs, at any time before the answer or demurrer is filed, or entered in the docket, or after demurrer and before the trial of the issue of law thereon, by filing the same as amended and serving a copy on the adverse party, * * *"

nia rule on splitting a cause of action, stated succinctly in *Sutphin v. Speik*, 15 Cal.2d 195, 99 P.2d 652, 655 (Cal.1940): "[T]he rule is that the prior judgment is res judicata on matters which were raised or could have been raised on matters litigated or litigable." Another shortcoming of the trial court's order should be pointed out. Two "Causes of Action" *not raised* by McDonnell Douglas' suit in Missouri, appear in General Dynamics' California amendments of March 23, 1976, delineated "fifth" and "sixth." Assuming arguendo that the trial court rightfully enjoined General Dynamics from proceeding on its causes of action numbered III and IV (the first two amendments of March 23, 1976) because the issues raised are within the scope of McDonnell Douglas' Missouri action, that rationale has no application to V and VI. The trial court erred by enjoining further proceedings as to those "Causes of Action."

■ An additional equitable consideration is found in the principle that one who seeks equity must come with "clean hands." In *Camfield Manufacturing Co. v. McGraw Electric Co.*, 70 F.Supp. 477 (D.Del.1947), the court denied plaintiff's motion for a preliminary injunction by which the plaintiff, who had filed suit in Delaware, sought to enjoin the defendant from proceeding in its later filed Michigan suit. The court found that plaintiff, in return for defendant's agreement not to file a direct infringement suit during negotiations, agreed defendant would have the opportunity of first filing his suit for direct infringement. When denying the injunction because of plaintiff's conduct, the court stated, "This is a finding somewhat analogous to a finding that plaintiff comes into court with unclean hands. This compels a decision that plaintiff is not entitled to the injunctive relief sought," concluding that "to obtain an injunction against a subsequently filed suit, a party must satisfy the first principles of equity that he has a right to such an injunction." (l.c. 479) The principles announced and ruling in *Camfield* are applicable to McDonnell Douglas' conduct here.

■ As a condition for obtaining equitable relief, petitioner must in a usual case show he has no adequate remedy at law. It is required that such must affirmatively appear from the face of the pleadings and from the evidence. *State ex rel. Phillips v. Yeaman*, 451 S.W.2d 115 (Mo.banc 1970). McDonnell Douglas in its motion alleges it has no adequate remedy at law but made no showing in support of that allegation. Its unadorned allegation is blunted by the presence of legal remedies available in the California system. McDonnell Douglas sought relief by its motion to stay in the California court, and on denial of that motion, it failed to seek review by appeal or proper writ in California.[9] We are not, however, holding that the presence of such legal procedures in California constitute per se a bar to equitable relief in the Missouri court under the circumstances in this case. We need not reach or rule the point; instead the presence of such procedure, coupled with McDonnell Douglas' partial resort thereto, are factors in determining the comity issue and to that extent impinge upon the question of appropriateness of injunctive relief.

The California court had jurisdiction to entertain the filing of General Dynamics' original suit and the amendments thereto. It received and considered McDonnell Douglas' motion to stay those proceedings and its ruling thereon remains a valid judgment on the issue. The jurisdiction of the California court and the right of the parties to prosecute proceedings therein, having once attached, cannot be arrested by the Missouri court. See *State ex rel. New York C. & St. L. R. Co. v. Nortoni*, 331 Mo. 764, 55 S.W.2d 272 (1932). The considerations of comity between states heavily favors California. Respondent argues that a race to judgment will result from the duplicative proceedings if injunction is prohibited. However, we must not lose sight of the possible consequences if respondent's injunction stands. What is to prevent the California court from enjoining McDonnell Douglas' prosecution of the Missouri suit?

**9.** Relator in its brief states that McDonnell Douglas filed a motion to suspend discovery in the California suit on May 11, 1976, but there is no record of any other action taken there.

An impasse more critical than that posited by respondent could ensue.

Following the April 29, 1976, denial of McDonnell Douglas' motion to stay in California, General Dynamics filed its motion to dismiss or in the alternative to stay the action pending in the Circuit Court of St. Louis County. Shortly thereafter, McDonnell Douglas filed its motion for a temporary injunction to restrain General Dynamics' further prosecution of the California action and on May 15 respondent entered a temporary injunction (amending its order made the previous day), enjoining both parties from proceeding in the Missouri action "except as to matters in the cause herein that pertain to the motion to dismiss or stay set for hearing herein on May 21, 1976, until May 28, 1976, or until the further order of this Court. . . ." General Dynamics had noticed McDonnell Douglas that on May 14 its motion to dismiss or stay would be presented. The hearing was rescheduled and held on May 21. According to relator, McDonnell Douglas gave no notice of any intention to call up its motion for temporary injunction nor that a hearing be conducted for a permanent injunction. McDonnell Douglas' only pleading in this regard was its "Motion by Plaintiff for Temporary Injunction" which, as noted above, sought in its prayer a *temporary* injunction until after General Dynamics' pending motion (to stay) had been adjudicated by the court and, "if said motion is denied, to make said temporary injunction permanent, *after further hearing.*" In support of that motion, McDonnell Douglas had filed a document entitled "Memorandum in Support of Plaintiff's Motion for Temporary Injunction" on or about May 10, in which it stated:

"Consequently, McDonnell is forced to seek temporary relief from this Court. Its motion simply requests that this Court exercise its power to maintain the status quo between the parties until after it has ruled upon General Dynamics' motion. McDonnell does not request a permanent

injunction at this time against the prosecution by General Dynamics of its second-filed duplicative lawsuit. The time for such motion will come after the Court rules upon General Dynamics' forum non conveniens motion, as McDonnell submits that there is no sound reason for this court to accede to General Dynamics' request that it abdicate its jurisdiction over this first-filed St. Louis lawsuit between St. Louis parties."

The memorandum concludes with this statement:

"This Court should exercise its well-established power to enjoin General Dynamics from proceeding further in the distant San Diego forum *until after* its forum non conveniens motion has been adjudicated by this Court." (Emphasis added.)

Because of the motion's form, statements contained in the supporting memorandum and the fact there was no notice of hearing as to any permanent injunction, relator with apparent justification states it went to court at the rescheduled hearing on its (General Dynamics) motion to dismiss or stay and presented arguments on those matters. Affidavits of relator's counsel filed here maintain that there was no discussion of equitable matters, such as irreparable injury, inequitable conduct, clean hands, adequate legal remedy, nor evidence relative thereto. No evidence was offered or arguments made on the equitable issues because no *petition* had been filed as required by Supreme Court Rule 92.01 for injunction, and no notice of hearing thereon given. While it appears the motion for temporary injunction could be construed as a petition sufficient to support an injunction proceeding, the record before us justifies relator's complaints that there was no notice and no proper opportunity to present evidence on the issue of permanent injunction.[10] Several cases are cited for the proposition that the party is entitled to a hearing prior to the issuance of a permanent injunction. *State ex rel. Eagleton v. Cam-*

---

**10.** Respondent's affidavit of February 10, 1977, gives this account of the May 21 hearing:

"One week later, on May 21, 1976, I heard argument from counsel for both McDonnell

eron, 384 S.W.2d 627, 629–30 (Mo.1964); *Stegmann v. Weeke*, 279 Mo. 131, 214 S.W. 134 (1919); *Bayer v. Associated Underwriters, Inc.*, 402 S.W.2d 11, 13 (Mo.App.1966). See also *Cirese v. Spitcaufsky*, 265 S.W.2d 753, 758 (Mo.App.1954). Relator also contends that "the hearing held on May 14, 1976, on the temporary injunction cannot fulfill the requirement of a hearing on the permanent injunction," citing among others, *Bayer v. Associated Underwriters, Inc., supra.* The difficulty under which we labor as to the latter contention is that there is no record of the hearing on May 14 other than the court's general recital in the temporary injunction order that it had considered the motions, evidence, briefs and oral argument presented by the parties. However, it has not been shown how the hearing on the temporary motion would suffice to support the issuance one week later of a *permanent injunction.*

In view of all the circumstances here, we hold the trial court exceeded its jurisdiction when restraining relator from proceeding in its action pending now in the Superior Court of the State of California for the County of San Diego.

We order the provisional rule be made absolute.

All concur.

Douglas Corporation and General Dynamics Corporation on General Dynamics Corporation's motion to dismiss or stay and on McDonnell Douglas Corporation's motion to make the temporary injunction permanent. At this hearing, I specifically inquired of counsel for both parties as to their positions concerning the *propriety of separating* the weight/price dispute, which was the only claim in General Dynamics Corporation's original complaint in the above-referenced San Diego case, from the other disputes which were in issue in this lawsuit and which had been added to the San Diego lawsuit by an amendment filed by General Dynamics Corporation on March 23, 1976. Counsel for McDonnell Douglas Corporation responded to this inquiry by contending that it is possible to separate the weight/price dispute, and counsel for General Dynamics Corporation argued to the contrary. At the conclusion of the hearing, counsel for McDonnell Douglas Corporation orally reiterated its motion that the temporary injunction be made permanent at the same time as I denied General Dynamics Corporation's motion to dismiss or stay, if I denied said motion."
Nothing in the affidavit contradicts relator's assertions that no evidence was offered concerning a *permanent injunction* and that no formal notice was given to consider the issue.
Respondent's affidavit further states that the parties in the seven months following May 21, 1976, periodically reasserted their respective arguments concerning the propriety of separating the weight/price issue from the other disputes but no mention is made as to the nature of any evidence that might have been offered at the hearing concerning a permanent injunction. Respondent, apparently aware of the procedural shortcomings of that proceeding and the absence of proof on the injunction issue, added the following:
"At no time during this [7 months] period did counsel for General Dynamics Corporation indicate to me that they sought any further opportunity to present their position concerning the permanent injunction requested by McDonnell Douglas Corporation or, specifically, the propriety of separating the weight/price dispute from the other disputes General Dynamics Corporation had added by its later amendment in the San Diego lawsuit, other than the further memoranda and materials it submitted on that issue and the other issues previously asserted."
We fail to see how the passage of time would shift the burden of proof to General Dynamics on McDonnell Douglas' motion for injunction. The record does not warrant an inference of waiver or estoppel that would deny General Dynamics its present contention as to the want of an adequate hearing.