**BROOKS ERECTION AND CONSTRUC-
TION COMPANY, Appellant,**

v.

**WILLIAM R. MONTGOMERY & ASSO-
CIATES, INC., Respondent.**

No. 41775.

Missouri Court of Appeals,
Eastern District,
Division Two.

Jan. 20, 1981.

Motion for Rehearing and/or Transfer to
Supreme Court Denied March 13, 1981.

Application to Transfer Denied
May 11, 1981.

Lewis R. Mills, Arthur L. Smith, J. Reed Johnston, Jr., Peper Martin, Jensen, Maichel & Hetlage, St. Louis, for appellant.

Law Office of Frank L. Pellegrini, William T. Weidle, Jr., St. Louis, for respondent.

GUNN, Judge.

Brooks Erection and Construction Co. (Brooks) has appealed a circuit court order rejecting its efforts for contempt and punishment against William R. Montgomery & Associates, Inc. (Montgomery) for alleged violation of temporary restraining orders issued and for dissolving those orders. The dispositive issues are: (1) whether the trial court was obligated to find Montgomery in contempt for disobedience to the court; and (2) whether its dissolution of the temporary restraining orders was procedurally flawed. We find no error and affirm.

Brooks and Montgomery are Missouri corporations with their principal offices in Missouri. Montgomery was acting as a subcontractor on a large construction project in Sebree, Kentucky and had subcontracted a portion of its work to Brooks. In early November, 1978, a dispute arose concerning Brooks' progress and performance on the project. Under the parties' contract, Montgomery had the right in certain circumstances to declare Brooks in default, order it off the job site, and take over the project using Brooks' tools and equipment. On November 9, 1978, Montgomery served notice on Brooks declaring it in default and indicating an intention to order Brooks' workmen off the job site pursuant to the contract. On November 11, 1978 Brooks filed suit in the St. Louis County circuit court seeking injunctive relief against Montgomery. In response to the petition, a temporary restraining order was issued by the circuit court prohibiting Montgomery "from taking over, or attempting to take over, or in any way interfering with any work being performed" by Brooks under the subcontract. Hearing on the temporary restraining order was set for November 17, 1978, but on November 15, Montgomery sought a writ of prohibition in the Supreme Court. As a result, a stop order was issued by the Supreme Court directed to the circuit court, and the hearing on the TRO was not held. On November 21, 1978, the petition for writ of prohibition was denied and the stop order lifted.

Meanwhile, on November 16, Montgomery filed suit against Brooks in the Webster County, Kentucky circuit court seeking to halt Brooks from working on the project and permitting Montgomery's use of the tools. The relief sought by Montgomery

was granted through the Kentucky circuit court. Brooks moved to dismiss or stay the Kentucky action by reason of the pendency of the Missouri proceeding. But after hearing evidence, on November 20, the Kentucky court denied Brooks' motion, determined that Brooks had defaulted under the contract and that Montgomery was entitled to perform the work using Brooks' tools. The Kentucky circuit court also issued a temporary restraining order to prevent Brooks from interfering with Montgomery's work on the project. After the Kentucky circuit court refused to dissolve its TRO, Brooks sought relief in the Kentucky Court of Appeals but was rejected in *Brooks Erection Co. v. William R. Montgomery & Associates*, 576 S.W.2d 273 (Ky.App.1979).

Further proceedings took place concurrently in the Missouri action. On November 27, 1978, Brooks filed a motion for an order to show cause why Montgomery should not be punished for contempt for violating the temporary restraining order of November 11, 1978. The St. Louis county circuit court issued an order to show cause and, after a "hearing without record", entered an order that: (1) found Montgomery was "not in contempt of this Court for acts committed prior to December 1, 1978"; (2) "supplemented and clarified the TRO issued by this Court on November 11, 1978" by ordering Montgomery to "cease performing any work on the subcontract between the parties and forthwith permit the subcontractor [Brooks] to resume work under said subcontract". Montgomery again petitioned the Missouri Supreme Court on December 20, 1978 for a writ of prohibition and stop order. The stop order was issued and remained in effect until February 20, 1979 when the Supreme Court denied prohibition and withdrew the stop order.

On March 15, 1979, Brooks again sought contempt against Montgomery for disregard of the St. Louis county circuit court order of December 1, 1978. Brooks' simultaneous application for a TRO to prohibit Montgomery from proceeding with Kentucky litigation was refused. After hearing by the same court, the temporary restraining orders of November 11 and December 1,

1978, were dissolved. A finding was made that Montgomery should not be punished for contempt, and Missouri proceedings were ordered to be stayed pending trial in Kentucky. This appeal followed.

Brooks alleges three errors by the St. Louis county circuit court. First, it argues that the trial court's failure to find Montgomery guilty of contempt was based on the erroneous belief that the stop orders issued by the Missouri Supreme Court permitted a disregard for the temporary restraining orders issued by the circuit court. Second, it argues that the trial court was absolutely obligated to impose punishment against Montgomery for contempt in disobeying its order. Third, it contends that the dissolution of the TRO did not follow the procedures mandated by Rules 92.16, 92.17 and 92.18, Mo.R.Civ.P., in that there was no hearing provided and that there was improper forum shifting.

In response to the first point—that the trial court was in error in finding no contempt—the order does not squarely address the contempt issue. It expresses no specific opinion on whether Montgomery was in contempt. The trial court, however, did determine that even if the acts were contemptuous, punishment was not condign under the circumstances: "In any event . . . there were sufficient mitigating circumstances to make it inequitable for this Court [trial court] to punish the contractor [Montgomery] for his violating this Court's Order of December 1, 1978." In support of its position the trial court relied on the following from *Fulton v. Fulton*, 528 S.W.2d 146, 157 (Mo.App.1975), quoting from 17 C.J.S. Contempt § 57: "The power to punish for contempt should be used sparingly, wisely, temperately, and with judicial restraint. . . The power should be exercised only when necessary to prevent actual, direct obstruction of, or interference with, the administration of justice."

 In arguing that the trial court erroneously thought that the Missouri Supreme Court's stop orders permitted Montgomery to disregard the temporary restraining or-

ders, Brooks cites the following from the trial court's order: "The contractor [Montgomery] has been allowed by this Court's Order and by the Missouri Supreme Court's Order to seek relief in the courts of Kentucky." The essence of this comment is substantially nubilous. But we are convinced that whatever its meaning, it does not overcome the general import of the trial court's order that it was aware that there was no basic excuse for violation of the temporary restraining orders. It is clear, however, that in spite of any non-compliance with outstanding orders, the trial court, within its discretion, chose not to punish Montgomery. That brings us to the second cynosure—whether the trial court has discretion to impose punishment for violation of a temporary restraining order.

■■■ Brooks argues that if a violation of the temporary restraining orders occurs, the trial court is without any discretion and must award compensatory damages to the aggrieved party. But the accepted view in this state appears otherwise. Though it has the duty to protect the integrity of its orders, whether non-compliance shall be punished as a contempt lies within the discretion of the court. *In re Blankenship*, 553 S.W.2d 307, 309 (Mo.App.1977); *Fulton v. Fulton*, 528 S.W.2d at 157.[1] So we look to see if the trial court's refusal to punish Montgomery under the circumstances was an abuse of discretion. It was not.

There are a number of factors in this case which lead us to conclude that the trial court did not abuse its discretion in refusing to award damages. The Kentucky litigation was, and is, at a more advanced stage than the Missouri proceedings, and Brooks' attorneys have had full opportunity to present their case. On November 20, 1978, the Kentucky court held an evidentiary hearing on the propriety of temporary in-

junctive relief; no such hearing had yet been held in Missouri, and no request for one was pending when the court made its decision not to award damages for contempt. After briefing and argument the injunctive relief in Montgomery's favor had been upheld by the Kentucky Court of Appeals. In addition, the uncontroverted testimony at the contempt hearing before the Missouri trial court was that if Brooks should again take over the project the general contractor would declare Montgomery in default.

■■■ Brooks asserts two reasons why the trial court erred in dissolving the temporary restraining orders. First, it notes that the procedures of Rules 92.16, 92.17 and 92.18, Mo.R.Civ.P., providing for a hearing on a motion to dissolve, were not followed. We agree that these rules are applicable in the usual situation in which the restrained party files a motion to dissolve. *See Perseverance Common School District No. 90 v. Honey*, 367 S.W.2d 243 (Mo.App.1963). But no such motion was filed by Montgomery; the court effectively dissolved the restraining orders *sua sponte*. The *Perseverance* case, cited by Brooks, recognizes "that a court of equity has certain inherent powers in matters of this kind." *Id.* at 247.[2] And the restraining orders contained the proviso that they were effective "until the further orders of [the trial court]". Inasmuch as no motion to dissolve was before it, the trial court did not violate Rules 92.16, 92.17 and 92.18. And, under the particular circumstances of this case in which a multitude of hearings were held with complete litigation in another jurisdiction we believe that the trial court did not abuse its inherent discretion by dissolving the TROs on its own motion.

■■■ The second reason offered by Brooks that the trial court erred in dissolv-

---

1. *Chemical Fireproofing Corp. v. Bronska*, 553 S.W.2d 710, 715 (Mo.App.1977), cited by Brooks, does not dispute this view. The other case cited by Brooks in support of its argument, *Vuitton et Fils S.A. v. Carousel Handbags*, 592 F.2d 126, 130–31 (2d Cir.1979), is largely dictum and is not binding on Missouri courts in any event.

2. In the *Perseverance* case, a motion to dissolve was filed by the defendants. Nevertheless, the trial court on its own motion, apparently without regard to defendant's motion, set aside the temporary injunction.

ing the TROs is that it effectively and improperly permitted Montgomery to shift the forum of the litigation to Kentucky. Brooks maintains that the general rule is: "When a resident of a state files an action against another resident of that same state in the courts of that state, the defendant in that action cannot shift the action to a different forum by filing its own second action on the same subject matter in the courts of another state." We agree that there are numerous Missouri cases which indicate a strong policy bent against duplicative actions and forum-shifting.[3] It is clear, however, that when duplicative actions have been filed in separate states, the decision on whether to defer to one action is not intransigently governed by the "first to file" rule. Rather, the decision ultimately reflects considerations of comity and the orderly administration of justice. *See, e. g., State ex rel. General Dynamics Corp. v. Luten,* 566 S.W.2d 452, 458 (Mo.banc 1978); *Madison v. Dodson,* 412 S.W.2d 552, 558 (Mo.App.1967); *Cutten v. Latshaw,* 344 S.W.2d 257, 262 (Mo.App.1961). The trial court indicated that the efficient administration of justice and comity considerations mitigated against continuing the Missouri proceedings. In addition, the Kentucky Court of Appeals recognized that considerations of comity and judicial efficiency did not call for an abatement of the Kentucky action in favor of the prior Missouri suit. *Brooks Erection Co. v. William R. Montgomery & Associates,* 576 S.W.2d at 275.

Under the facts and circumstances of this case, we find no abuse of discretion in dissolving the temporary restraining orders and staying further proceedings in Missouri. Although in retrospect it may appear that it would have been more convenient to try the merits of the action in St. Louis County circuit court, the information before the trial court did not so indicate.[4] Nothing leads us to suspect that Montgomery was attempting to evade some established policy of this state by resorting to the Kentucky courts. The action had, and has, significant contacts with the state of Kentucky. Litigation there has proceeded to a more advanced stage, and we find no error in permitting it to proceed without further obfuscation.

Finding no reversible error, we affirm.

PUDLOWSKI, P. J., and WEIER, J., concur.

---

3. *See, e. g., State ex rel. General Dynamics Corp. v. Luten,* 566 S.W.2d 452, 458 (Mo.banc 1978); *Jewell v. Jewell,* 484 S.W.2d 668, 674 (Mo.App.1972); *Grey v. Independent Order of Foresters,* 196 S.W. 779, 783 (Mo.App.1917).

4. Affidavits filed indicated that seven of eight witnesses for Brooks resided in Missouri, but all ten of Montgomery's witnesses lived in Kentucky.

As a convenience to the parties, the Kentucky circuit court appointed a special commissioner to hear evidence in St. Louis. Of the 38 days of trial for the Kentucky case, 37 were heard in Missouri, and the case has been submitted for decision.