

# MISSOURI COURT OF APPEALS
# WESTERN DISTRICT

| | | |
|---|---|---|
| FINANCIAL CREDIT INVESTMENTS II, TRUST E, | ) ) ) | |
| Appellant, | ) ) | |
| v. | ) ) | WD87569 |
| ESTATE OF GEORGIA TOWERS, et al., | ) ) ) | Filed: June 17, 2025 |
| Respondents. | ) ) | |

### Appeal from the Circuit Court of Jackson County
### The Honorable James F. Kanatzar, Judge

### Before Division Three: Edward R. Ardini, P.J., and
### Alok Ahuja and Thomas N. Chapman, JJ.

Financial Credit Investments II, Trust E, filed this action in the Circuit Court of Jackson County against the Estate of Georgia Towers, and against Edwin Towers, Georgia Towers' husband. (Georgia Towers died in 2021.) The lawsuit concerns the parties' respective rights to a policy insuring Georgia Towers' life. Financial Credit contends that it is entitled to the $5 million death benefit on the life insurance policy, because the Towerses lawfully sold their rights in the policy in the secondary market, and Financial Credit purchased the policy rights before Georgia Towers' death. The Estate and Edwin Towers contend that the policy

was an unlawful "stranger originated life insurance" (or "STOLI") policy, and that the proceeds of the policy rightfully belong to the Estate.

The circuit court dismissed Financial Credit's action, due to the pendency of other litigation initiated by the Estate in Minnesota and Delaware, which raises the same issues. Financial Credit appeals. We affirm.

**Factual Background**

We refer to the Estate and Edwin Towers collectively as "the Estate," except where the context requires otherwise. As explained in the "Standard of Review" section which follows, we recite the facts in the light most favorable to the circuit court's judgment, considering not only the allegations of Financial Credit's amended petition, but also the exhibits which both parties submitted to the circuit court in connection with the Estate's motion to dismiss.

The Estate alleges that, beginning in 2001, Coventry, U.S. Bank, Wells Fargo, Financial Credit, and others entered into a series of contracts through which Coventry and others agreed to originate life insurance policies that would then be sold to investors after the policies' contestability periods expired. (The "contestability period" is the time during which an insurance company can challenge the validity of a newly issued policy. *See PHL Variable Ins. Co. v. Price Dawe 2006 Ins. Tr.*, 28 A.3d 1059, 1065 (Del. 2011)). U.S. Bank and Wells Fargo served as "securities intermediaries" for the bulk of the policies, meaning that they were named as the record owners of the insurance policies, and acted as agents for the policies' beneficial owner-investors. Ultimately, when the insured died, the securities intermediary would obtain a death certificate and claim the

2

benefits under the policy.  The securities intermediary would then transfer the policy proceeds to the policy's beneficial owner(s).

In 2006, while residing in California, Georgia and Edwin Towers obtained a policy on Georgia's life, with a death benefit of $5 million.  The Policy was issued to the Georgia R. Towers Family Trust 2006, which was created as a Delaware *inter vivos* trust, administered by a Delaware trustee (Wilmington Trust Company).  The Estate alleges that Coventry created the Trust, and orchestrated the entire transaction whereby the Policy was originated.  Sometime in 2008, after the contestability period for the Policy expired, the Towerses sold their individual and collective rights to the Policy to a third party who used Wells Fargo as securities intermediary.  Financial Credit alleges that Georgia and Edwin Towers "collected a substantial payout through the sale of the Policy, and did not pay any premiums on the Policy after its sale."

The Estate alleges that, prior to the sale of the Policy to the third-party investor, premiums for the Policy were paid using the proceeds of a non-recourse loan issued by Coventry to the Trust; the loan was secured solely by the Policy and the Trust.  The Estate alleges that the loan was a sham, and was designed so that, at the end of the Policy's contestability period, all rights to the Policy and the Trust would be relinquished to Coventry in satisfaction of the loan.  Once the Policy was sold to a third-party investor, that investor (acting through Coventry and Wells Fargo), paid the premiums on the Policy until Georgia Towers' death.

Georgia and Edwin Towers moved to Missouri sometime in 2008.

3

In 2015, the Policy was sold to Financial Credit, although Wells Fargo continued as the Policy's ostensible owner and beneficiary in its role as securities intermediary.

After Georgia Towers' death in 2021, the $5 million death benefit under the policy was paid to Wells Fargo. Wells Fargo then transferred the death benefit to Financial Credit.

The Estate alleges that the Policy was an illegal "stranger-originated life insurance" (or "STOLI") policy. In *Warnock v. Davis*, 104 U.S. 775 (1881), the Supreme Court of the United States gave an early explanation why most jurisdictions prohibit such STOLI policies. The Court explained that, for a life insurance policy to be valid,

> there must be a reasonable ground, founded upon the relations of the parties to each other, either pecuniary or of blood or affinity, to expect some benefit or advantage from the continuance of the life of the assured. Otherwise the contract is a mere wager, by which the party taking the policy is directly interested in the early death of the assured.

*Id.* at 779.[1]

In January 2023, the Towers Estate and eight other estates filed suit against U.S. Bank and Wells Fargo in the United States District Court for the District of Minnesota. *Estate of Ann Boggess, et al. v. U.S. Bank, N.A. and Wells*

---

[1]     *See also, e.g.*, *Geronta Funding v. Brighthouse Life Ins. Co.*, 284 A.3d 47, 60 (Del. 2022) ("[f]or hundreds of years, the law has prohibited wagering on human life through the use of life insurance that was not linked to a demonstrated economic risk"); *Estate of Bean v. Hazel*, 972 S.W.2d 290, 291 (Mo. 1998) ("The longstanding rule in Missouri is that one must have an insurable interest in a person's life in order to take out a valid policy of insurance on that person's life. . . . If a beneficiary insures the life of a person when the beneficiary has no insurable interest, the policy is referred to as a wager life insurance policy." (citations omitted)); *Jimenez v. Protective Life Ins. Co.*, 10 Cal. Rptr.2d 326, 330 (App. 1992) (same); Cal. Ins. Code § 10110.1(a).

4

*Fargo Bank, N.A.*, Case No. 0:23-cv-00045 (D. Minn.). The estates alleged that the policies insuring the lives of each of their decedents were STOLI policies which were void *ab initio* under Delaware law. *See*, *e.g.*, *Wells Fargo Bank, N.A. v. Estate of Malkin*, 278 A.3d 53, 56 (Del. 2022) ("STOLI policies are void *ab initio*, never come into legal existence, represent a 'fraud on the court,' and can never be enforced"). The Minnesota Action named Wells Fargo and U.S. Bank as defendants in their capacities as securities intermediaries, and based on their status as record owners of the challenged policies, and the immediate recipients of the death benefits paid under the policies. The estates claimed that, under 18 Del. C. § 2704(b), the estates were entitled to recover from Wells Fargo and U.S. Bank the life insurance benefits which had been paid to them.

The deadline to amend the complaint in the Minnesota Action to add additional defendants was April 12, 2023; that deadline passed without the estates amending their complaint to name any of the policies' beneficial owners.

In early May 2023, the previously unknown beneficial owners of two of the policies at issue in the Minnesota Action filed suit in Pennsylvania against the estates of the decedents named in those two policies. *Viva Capital 3 LP v. Bolle*, Civ. No. 2023-09333 (Court of Common Pleas, Montgomery County, Pa.); *VC 3 LS 2021 LP v. Howey*, Civ. No. 2023-09337 (Court of Common Pleas, Montgomery County, Pa.). Neither of the Pennsylvania lawsuits involved the Policy insuring Georgia Towers' life.

In response to the Pennsylvania actions, on May 12, 2023, all of the original plaintiffs in the Minnesota Action, including the Towers Estate, filed suit in Delaware. *Estate of Ann Boggess, et al. v. Viva Capital 3 L.P., et al.*, No.

5

N23C-05-130 EMD CCLD (Del. Super. Ct.). The Delaware complaint named the newly discovered beneficial owners as defendants.

Like the Minnesota Action, the Delaware Action sought to recover the life insurance benefits paid out to the securities intermediaries, and ultimately paid to the beneficial owners. The original complaint in the Delaware Action alleged that, "[w]hen they brought the Minnesota action, Plaintiffs did not know the identity of the Policies' beneficial owners." The Delaware complaint alleged that, in the Minnesota Action, Wells Fargo and U.S. Bank had "conceal[ed] the identities of the Policies' beneficial owners," and that the estates had only learned the names of certain of the beneficial owners when the investor-owners filed "two surprise lawsuits" in Pennsylvania. Besides naming the beneficial owners whose identities had been revealed in the Pennsylvania litigation, the Delaware complaint stated that "Plaintiffs reserve their right to amend this Complaint to add any other beneficial owners that come to light."

Ten days after the filing of the Delaware Action, Financial Credit filed the present lawsuit in the Circuit Court of Jackson County on May 22, 2023. Financial Credit named as defendants the Estate and Edwin Towers (in his personal capacity, and in his capacities as executor of the Estate, and co-trustee of the Trust). Financial Credit claimed that it was rightfully entitled to the benefits payable under the Policy because it had lawfully purchased the Policy, and had paid the premiums on the Policy for several years before Georgia Towers' death. Financial Credit's original petition sought a declaratory judgment establishing its right to the Policy's proceeds. Financial Credit's original petition also sought contractual and common-law indemnification from the Estate and

from Edwin Towers for the costs and attorneys' fees which Wells Fargo had incurred defending the "baseless lawsuit" filed by the Estate in Minnesota. Financial Credit alleged that it was entitled to indemnity for defense costs incurred *by Wells Fargo*, because Financial Credit "likely will be responsible for such attorneys' fees and costs per its securities account agreement with Wells Fargo." Financial Credit also sought indemnification for the costs and attorney's fees it incurred in the Jackson County case itself.

On May 24, 2023, the Towers Estate removed the case to the United States District Court for the Western District of Missouri. The federal court remanded the case to the circuit court on October 16, 2023, based on the fact that both the Estate and Edwin Towers were residents of the forum state in which the suit had been filed.

Once Financial Credit revealed its identity by filing suit in Jackson County, the estates amended their complaint in the Delaware Action on June 1, 2023, to add Financial Credit as a defendant. Not to be outdone, on December 18, 2023, Financial Credit amended its Jackson County petition to assert claims for fraud and unjust enrichment against Edwin Towers personally, and in his capacity as the Estate's executor.

The Estate moved to dismiss or stay Financial Credit's Missouri lawsuit on the basis of comity, *forum non conveniens*, the compulsory counterclaim rule, and for failure to adequately plead the elements of fraud and unjust enrichment. The circuit court granted the Estate's motion to dismiss "for the reasons set forth in Defendant[s'] pleadings."

Financial Credit appeals.

## Jurisdiction

The circuit court's judgment did not specify whether the court dismissed Financial Credit's petition with or without prejudice. Because the judgment does not otherwise specify, the dismissal is deemed to be without prejudice. Supreme Court Rule 67.03.

Before addressing the merits of Financial Credit's appeal, we must decide whether we have appellate jurisdiction. *See*, *e.g.*, *Matthews v. Harley-Davidson*, 685 S.W.3d 360, 365 (Mo. 2024) (citing *Wilson v. City of St. Louis*, 600 S.W.3d 763, 765 (Mo. 2020)). The fact that the judgment dismissed Financial Credit's petition without prejudice "raises a question of whether the judgment is final and appealable," because the Missouri Supreme Court "occasionally has referred to a 'general rule that a dismissal without prejudice is not a final judgment and, therefore, is not appealable.'" *Naylor Senior Citizens Hous., LP v. Sides Constr. Co.*, 423 S.W.3d 238, 242 (Mo. 2014) (citation omitted). The Court also observed, however, that "[i]t is unclear to what extent, if any, this 'general rule' ever was followed," and that, "[o]ver time, . . . exceptions seemed to have swallowed all or nearly all of whatever rule once might have existed." *Id.* at 243; *see also State ex rel. Henderson v. Asel*, 566 S.W.3d 596, 599 n.6 (Mo. 2019) (quoting *Naylor*).

Although the circuit court's judgment may permit Financial Credit to reassert its claims in another lawsuit, the judgment prevents Financial Credit from litigating its claims in Jackson County, where it chose to file suit. "'[A]n appeal from a dismissal without prejudice can be taken where the dismissal has the practical effect of terminating the litigation in the form cast *or in the plaintiff's chosen forum*.'" *Konopasek v. Konopasek*, 683 S.W.3d 250, 254 (Mo.

2023) (emphasis added; quoting *Avery Contracting, LLC v. Niehaus*, 492 S.W.3d 159, 162 (Mo. 2016)). The circuit court's dismissal, albeit without prejudice, prevents Financial Credit from litigating in its forum of choice; the judgment is accordingly final and appealable.

**Standard of Review**

As described above, the Estate moved to dismiss Financial Credit's petition on multiple grounds, and the circuit court's judgment does not specify the basis for dismissal on which it relied. Where, as here, a circuit court "did not specify the basis for its decision to grant the Motion to Dismiss, we presume the dismissal was on a basis set forth in the motion to dismiss, and we will affirm the dismissal if it can be supported on any basis set forth in the motion to dismiss." *Hartman v. Logan,* 602 S.W.3d 827, 835 (Mo. App. W.D. 2020). "Only if the motion to dismiss cannot be sustained on any ground alleged in the motion will the trial court's ruling be reversed." *Rene v. Royal City Bell, LLC,* 686 S.W.3d 262, 264-65 (Mo. App. W.D. 2024) (cleaned up; *quoting Estate of Barros,* 659 S.W.3d 624, 628 (Mo. App. W.D. 2022)).

As explained in the Discussion which follows, the circuit court's judgment can be sustained on the basis of the comity doctrine, due to the pendency of litigation in other States raising the same issues which Financial Credit sought to raise here. In *Estate of Barros*, 659 S.W.3d 624 (Mo. App. W.D. 2022), we summarily held that a similar dismissal based on the comity doctrine would be reviewed under the general principle that "[w]e review the trial court's decision to grant a motion to dismiss *de novo*." *Id*. at 627.

9

Unlike in *Estate of Barros* (where the standard of review was not seriously contested or addressed by the parties), Financial Credit and the Estate argue at length in their briefing over the standard of review properly applicable to a circuit court ruling based on the comity doctrine. Based on the parties' briefing, and our own research, we conclude that circuit court decisions invoking the comity doctrine should be reviewed for an abuse of discretion.

In a number of cases, this Court has held that circuit courts have *discretion* whether or not to rely on the comity doctrine to suspend litigation in Missouri due to the pendency of similar litigation in another State, and that such rulings are reviewed solely for abuse of that discretion. Most notably, in *State ex rel. Miller v. Jones*, 349 S.W.2d 534 (Mo. App. 1961), this Court held that a circuit court's refusal to stay a Missouri divorce proceeding, in deference to an earlier-filed Colorado divorce case, was not subject to a writ of prohibition, because the decision whether to invoke comity principles was discretionary. *Miller* explicitly distinguished the comity doctrine, which involves suits pending in different states, from the abatement doctrine applicable to parallel *Missouri* cases:

> Abatement is a matter of right and the general rule is that, the pendency of a prior suit in one state cannot be pleaded in abatement or in bar to a subsequent suit in another state, even though both suits are between the same parties and upon the same cause of action. However, the court in which the second action is brought may in its discretion stay or suspend that suit, awaiting decision in the first one, or, influenced by a spirit of comity, may refuse to entertain it, if the same relief may be awarded in the prior suit.
>
> . . . [I]t is clear from the authorities quoted above that the question of granting a stay in the proceedings is a matter for the respondent's discretion, and of course, the manner in which the respondent should exercise his discretion is not a proper subject for prohibition.

10

*Id.* at 538-39 (cleaned up); *see also Brooks Erection & Constr. Co. v. William R. Montgomery & Assocs., Inc.*, 613 S.W.2d 859, 863 (Mo. App. E.D. 1981) (finding "no abuse of discretion" where trial court dissolved orders and stayed further proceedings pending conclusion of out-of-state litigation); *Jewell v. Jewell*, 484 S.W.2d 668, 674 (Mo. App. 1972) ("The trial judge is vested with a broad discretion in the matter under consideration and there being no manifest abuse, that discretion as exercised should not be disturbed.").

The factors guiding a comity decision support the conclusion that this is a discretionary determination. The Missouri Supreme Court has explained that the comity rule is not a "matter . . . of right" or "a rule of law," but is instead based on considerations of "courtesy," "respect," "convenience and expediency"; the doctrine "does not of its own force compel a particular course of action," but is instead "an expression of one State's entirely voluntary decision to defer to the policy of another." *Ramsden v. State of Illinois*, 695 S.W.2d 457, 459-60 (Mo. 1985) (cleaned up).

Notably, the considerations governing the application of the comity doctrine are similar to those considered in the application of *forum non conveniens*. *Compare Loew v. Heartland Trophy Props., Inc.*, 665 S.W.3d 339, 346 (Mo. App. W.D. 2023) (describing factors to be considered in determining whether to apply *forum non conveniens* doctrine) *with Brooks Erection*, 613 S.W.2d at 863 & n.4 (discussing factors relevant to comity determination). "Because the application of the doctrine of *forum non conveniens* is fact intensive and the weight to be accorded any factor is dependent on the circumstances," dismissals based on *forum non conveniens* are reviewed for an abuse of

discretion. *Anglim v. Mo. Pac. R.R. Co.*, 832 S.W.2d 298, 303 (Mo. 1992); *accord Chandler v. Multidata Sys. Int'l Corp.*, 163 S.W.3d 537, 546 (Mo. App. E.D. 2005). Similar considerations apply to a circuit court's application of the comity doctrine. We will accordingly review the circuit court's judgment under the abuse of discretion standard.[2]

In connection with the Estate's motion to dismiss or stay the case, both parties submitted materials for the court's consideration beyond Financial Credit's amended petition. Neither party objected to the consideration of those additional materials. A circuit court may be limited to the allegations of the petition when deciding a motion to dismiss for failure to state a claim under Rule 55.27(a)(6). The court is not similarly constrained, however, when a motion to dismiss is based on issues which are independent of the merits of the plaintiff's claims. Thus, in *Andra v. Left Gate Property Holding, Inc.*, 453 S.W.3d 216 (Mo. 2015), the Missouri Supreme Court held that a circuit court may consider matters beyond the petition, and may resolve factual disputes, when deciding a motion to dismiss for lack of personal jurisdiction. The Court explained:

> When the motion to dismiss for lack of personal jurisdiction is based on facts not appearing in the record, a court may also consider affidavits and depositions properly filed in support of the motion to dismiss. Such consideration does not serve to convert the motion to dismiss into a motion for summary judgment as the trial court's inquiry is limited to an examination of the petition on its face and the supporting affidavits to determine the limited question of personal jurisdiction. The merits of the underlying case are not considered. The circuit court can believe or disbelieve any statement

---

[2] Because this opinion does not follow *Estate of Barros*' statement concerning the applicable standard of review, the opinion has been reviewed and approved by order of the Court *en banc*. *See* S. Ct. Operating Rule 22.01; W.D. Special Rule 31.

12

in such affidavits, and factual determinations are within the sole
discretion of the circuit court.

*Id.* at 224 (cleaned up; citing and quoting *Chromalloy Am. Corp. v. Elyria
Foundry Co.*, 955 S.W.2d 1, 3 n.3 (Mo. 1997)); *see also Smith v. City of St. Louis*,
573 S.W.3d 705, 712 (Mo. App. E.D. 2019). Similarly, the Supreme Court has
recognized that, "[i]n deciding whether to dismiss [on the basis of *forum non
conveniens*], a trial court necessarily must determine facts and, in doing so,
weighs evidence and assesses the credibility of witnesses as to the reasons given
for selecting or opposing a particular forum." *Anglim*, 832 S.W.2d at 303.

Accordingly, in reviewing the circuit court's judgment, we will consider all
of the materials which the parties put before the circuit court, and "the evidence
will be viewed in a light favorable to the result of the trial court." *Id.*

**Discussion**

In *Estate of Barros*, 659 S.W.3d 624 (Mo. App. W.D. 2022), this Court
recently summarized Missouri's comity doctrine as it applies to the situation
where similar litigation is pending in Missouri and in another State:

> Comity is a voluntary decision of one state to defer to the
> policy of another in an effort to promote uniformity of laws,
> harmony in their application, and other related principles. Comity
> and the duty to recognize the validity and effect of court proceedings
> in a foreign jurisdiction are not regarded as absolute rights, but are
> rather self-imposed restraints. The rule of comity is a matter of
> courtesy, complaisance, respect – not of right but of deference and
> good will. The doctrine of comity is not a rule of law, but one of
> practice, convenience and expediency.
>
> . . . .
>
> Under the principle of comity, when two state courts have
> jurisdiction to determine an issue between the same parties, the
> court whose jurisdiction attached first should proceed to render a

final judgment. There are numerous Missouri cases which indicate a strong policy bent against duplicative actions and forum-shifting. When duplicative actions have been filed in separate states, the decision on whether to defer to one action is not intransigently governed by the "first to file" rule. Rather, the decision ultimately reflects considerations of comity and the orderly administration of justice.

*Id.* at 628-29 (cleaned up); *see also Brooks Erection*, 613 S.W.2d at 863 & n.4 (in affirming circuit court's application of comity doctrine, referencing convenience of the parties; location of witnesses; the litigation's connection to the competing states; the progress of the litigation in different forums; and the parties' attempt to evade important forum-state policies).

The circuit court did not abuse its discretion in dismissing Financial Credit's petition in the circumstances existing here. The Minnesota, Delaware and Missouri actions all involved the same fundamental, underlying issue: whether the policy insuring Georgia Towers' life was an unlawful STOLI policy. That fundamental question merits a single, uniform answer.

In addition, Delaware has an equal, if not greater, interest in the litigation than Missouri. Although the Towerses lived in Missouri when Georgia Towers died, they lived in California – not Missouri – when the Trust was established and the Policy first purchased. Moreover, the Policy was actually purchased by a Delaware trust, which had a Delaware Trustee. The parties chose to arrange the procurement of the Policy by a Delaware trust, with a Delaware trustee, at a time when 18 Del. C. § 2704(g) provided that Delaware's insurable interest statute would apply to any "trust-owned life insurance policy . . . without regard to an insured's state of residency or location." The statute also provided that "a trust-owned life insurance policy, if delivered to the place of business in Delaware of

14

the trustee of said trust[,] . . . shall be deemed to have been delivered in this State." *Id.* Thus, the choice to structure the purchase of the Policy through a Delaware trust, with a Delaware trustee, had potential legal significance of which the parties were, or should have been, aware.[3]

The application of comity principles is also justified by the fact that the Delaware action was filed prior to Financial Credit's initiation of this lawsuit. The original Delaware complaint alleged that the securities intermediaries had concealed the identity of the policies' beneficial owners in the Minnesota litigation, and that the plaintiff-estates did not know the identity of any of the beneficial owners until two of them filed "surprise lawsuits" in Pennsylvania. The Delaware complaint also alleged that the securities intermediaries had concealed the beneficial owners' identities to permit the beneficial owners to gain a tactical advantage by filing preemptive lawsuits in jurisdictions of their choosing. The original Delaware complaint also advised that "Plaintiffs reserve their right to amend this Complaint to add any other beneficial owners that come to light." Thus, Financial Credit should have anticipated that the Estate intended to name it as a defendant in the Delaware Action, as soon as the Estate could learn Financial Credit's identity. The fact that Financial Credit filed its Missouri lawsuit in the face of threatened litigation by the Estate favors deference to the Delaware action. *See Anheuser-Busch, Inc. Supreme Int'l Corp.*, 167 F.3d 417, 419 (8th Cir. 1999) (affirming dismissal of federal lawsuit in Missouri where the

---

[3]     This opinion should not be read to decide any choice-of-law issue; we refer to 18 Del. C. § 2704(g) only to identify the relative weight of Delaware's connection to the litigation, and the possible tactical reasons for Financial Credit's filing of this action in Missouri.

plaintiff filed its declaratory judgment action after receiving notice that adverse party intended to file its own lawsuit).

It is also significant that Financial Credit's initial petition primarily sought a declaratory judgment that the Policy was lawfully issued (and secondarily, indemnification for the costs it had incurred in defense of the Estate's lawsuits which claimed the contrary). The fact that Financial Credit primarily sought declaratory relief "merits a closer look, as such an action may be more indicative of a preemptive strike than a suit for damages or equitable relief." *Nw. Airlines, Inc. v. Am. Airlines, Inc.*, 989 F.2d 1001, 1007 (8th Cir. 1993) (citation omitted). Financial Credit had *received* the death benefit under the Policy; it was seeking to *retain* those monies. The Estate, on the other hand, was seeking to upset the *status quo*; the Estate was seeking *affirmative relief* in the form of payment to it of the Policy's proceeds. Thus, the circuit court could justifiably conclude that the Estate was the "true plaintiff" in this scenario, and that Financial Credit had filed a defensive action in an attempt to preempt the Estate's choice of forum. Given 18 Del. C. § 2704(g), which would appear to require the application of Delaware's insurable-interest law to the Policy, the circuit court could also properly determine that Financial Credit had filed its Missouri action in an exercise of forum-shopping, to evade the potential application of Delaware law in the Delaware Action. *See* footnote 3, above.

Delaware law appears to be well-developed with respect to the legal issues underlying this dispute. In the last several years, Delaware courts have issued multiple decisions addressing the legality of policies like the one insuring Georgia Towers' life, and the remedies in the event such a policy is found to be unlawful.

*See Wilmington Tr. v. Sun Life Assur. Co. of Canada*, 294 A.3d 1062 (Del. 2023); *Geronta Funding v. Brighthouse Life Ins. Co.*, 284 A.3d 47 (Del. 2022); *Wells Fargo Bank, N.A. v. Estate of Malkin*, 278 A.3d 53 (Del. 2022); *Lavastone Capital LLC v. Estate of Berland*, 266 A.3d 964 (Del. 2021); *PHL Variable Ins. Co. v. Price Dawe 2006 Ins. Tr.*, 28 A.3d 1059 (Del. 2011); *Lincoln Nat'l Life Ins. Co. v. Joseph Schlanger 2006 Ins. Tr.*, 28 A.3d 436 (Del. 2011).  Delaware apparently has a strong public policy interest in addressing issues involving STOLI policies; the Delaware Supreme Court has observed that "STOLI arrangements are unique in that they are not simply void *ab initio*, anathema to hundreds of years of public policy, or violative of the Delaware Constitution, but they boast all three of these unenviable qualities."  *Estate of Malkin*, 278 A.3d at 65 n.48.

Financial Credit argues that comity is inapplicable because the parties and issues are not perfectly aligned between the Jackson County lawsuit, and the Minnesota and Delaware Actions.  Comity is "not intended to be rigid, mechanical, or inflexible, but should be applied in a manner serving sound judicial administration."  *Orthmann v. Apple River Campground,* 765 F.2d 119, 121 (8th Cir. 1985).  Federal caselaw holds that comity principles may be applied "when the parties in the two actions 'substantial[ly] overlap,' even if they are not perfectly identical."  *Baatz v. Columbia Gas Transmission, LLC*, 814 F.3d 785, 790 (6th Cir. 2016) (quoting *Save Power Ltd. v. Syntek Fin. Corp.*, 121 F.3d 947, 950–51 (5th Cir.1997)).  Moreover, application of comity principles is appropriate even when the issues are not identical, so long as the issues are "materially on all fours" and "have such an identity that a determination in one action leaves little

17

or nothing to be determined in the other." *Baatz*, 814 F.3d at 791 (cleaned up; affirming application of federal comity even when one party later added additional claims of conversion and unjust enrichment). For reasons we have explained, the issues and parties between the Minnesota, Delaware, and Jackson County were sufficiently similar to support the circuit court's exercise of its discretion to dismiss Financial Credit's case.

On appeal, Financial Credit complains that the Estate's motion to dismiss or stay raised disputed factual issues, and that it should have been given the opportunity to conduct discovery and present live testimony before the court dismissed the petition. But Financial Credit never argued in the circuit court that the court should delay ruling on the Estate's motion to permit further factual development to occur. Generally, "[a]rguments not raised before the trial court are not preserved for review on appeal because we will not convict a trial court of error on an issue that was not put before the trial court to decide." *Irving v. Angstrom*, 702 S.W.3d 248, 258 (Mo. App. W.D. 2024) (cleaned up).

In its briefing, Financial Credit emphasizes the fraud and unjust enrichment claims which it asserted in the amended petition it filed on December 18, 2023. But Financial Credit only asserted those claims after the plaintiff-estates had amended their complaint in the Delaware Action to specifically name Financial Credit as a defendant. The circuit court could properly give diminished weight to claims Financial belatedly added to its petition, in an apparent effort to bolster its claim that the dispute should be adjudicated in Missouri rather than in Minnesota or Delaware.

18

Given the circumstances in this case, the circuit court did not abuse its discretion in deciding, in the interest of interstate comity, to dismiss Financial Credit's Jackson County lawsuit, in deference to the earlier-filed suits pending in Minnesota and Delaware.

We offer one final caveat: the Estate moved to dismiss Financial Credit's petition, or in the alternative for a stay pending resolution of the Minnesota and Delaware Actions. Financial Credit does not challenge the circuit court's decision to dismiss the case without prejudice, rather than to stay the action. We accordingly do not address whether a dismissal without prejudice, or instead a stay, was the appropriate remedy once the circuit court concluded that considerations of comity justified deference to the Minnesota and Delaware Actions.

## Conclusion

The circuit court's judgment is affirmed.

_____
Alok Ahuja, Judge

All concur.

19